IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02377–REB–KMT

LESTER WILLIAMS, an individual,

      Plaintiff,

v.

PHILIP ARAGON,
LOU ARCHULETA,
MARY CARLSON,
JAMES COOPER,
STEVEN HAGER,
PAUL HOLLENBECK,
KRISTIN WATT,
JOHN DOE, individual employees of the Colorado Department of Corrections,
RICHARD LALONDE,
JAMES MARKUM, individual employees of Cheyenne Mountain Re-Entry Center in
Colorado Springs, Colorado, and
COMMUNITY EDUCATION CENTERS, INC., d/b/a CHEYENNE MOUNTAIN REENTRY
CENTER in Colorado Springs, Colorado,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on the "CMRC Defendants'[1] Motion to Dismiss" (Doc.

No. 26, filed Nov. 22, 2013 [CMRC Defs.' Mot. Dismiss]) and Defendant Aragon, Archuleta,

Carlson, Cooper, Hager, Hollenbeck, and Watt's (collectively, the "CDOC Defendants")

"Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)."  (Doc. No. 28, filed Nov. 22,

---

[1] The CMRC Defendants are Defendants Richard LaLonde, James Markum, and Community
Education Centers, Inc d/b/a Cheyenne Mountain Reentry Center.

2013 [CDOC Defs' Mot. Dismiss]).  For the following reasons, the court RECOMMENDS that

Defendants' Motions to Dismiss be GRANTED.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint (Doc. No. 1, filed Sept. 3, 2013)

and are assumed to be true for purposes of this Recommendation.  In his Complaint, Plaintiff

asserts that he was wrongfully incarcerated in the Colorado Department of Corrections (CDOC)

for 198 days, in violation of his rights under the United States Constitution and Colorado law.

### A.    *Colorado Statutory Background*

Section 18-1.3-406 of the Colorado Revised Statutes (hereinafter the "Violent Crimes

statute") provides for enhanced mandatory sentences when a defendant is convicted for a "crime

of violence."  *See* Colo. Rev. Stat. § 18-1.3-406(1)(a)-(b).  The Violent Crimes statute defines a

"crime of violence" as any of ten enumerated offenses when a person uses, possesses, or

threatens to use a deadly weapon or causes serious bodily injury or death in the commission,

attempt, or flight from the offense, or conspires to do so.  § 18-1.3-406(2(a)(I).  The ten

enumerated offenses are (a) any crime against an at-risk adult or at-risk juvenile; (b) murder; (c)

first- or second-degree assault; (d) kidnapping; (e) certain sexual offenses; (f) aggravated

robbery; (g) first-degree arson; (h) first-degree burglary; (i) escape; and (j) criminal extortion.

§ 18-1.3-406(2)(a)(II).

Certain offenses are designated as *per se* crimes of violence.  For example, an offense

under subsection 4 of the Colorado's second-degree kidnapping statute, Colo. Rev. Stat. § 18-3-

302(4)(a)—which involves kidnapping with an intent to sell, trade or barter the victim, or the use

or threat of use of a deadly weapon—is designated as a *per se* crime of violence, § 18-3-

302(4)(b) ("A defendant convicted of second degree kidnapping committed under . . . subsection (4) shall be sentenced by the court in accordance with the provisions of section 18-1.3-406."). When a defendant is convicted of a *per* se crime of violence, the prosecution is not required to separately charge and prove the elements of a crime of violence in order for the court to aggravate the sentencing range in accordance with the Violent Crimes statute. *People v. Nagi,* --- P.3d ----, 2014 WL 554265, at *6 (Colo. App. Feb. 13, 2014) (citations omitted).

However, where a defendant is not charged with a *per se* crime of violence, he can be subject to enhanced sentencing under the Violent Crimes statute only when (1) the indictment or information alleges a crime of violence as a separate count and (2) the finder of fact makes a specific finding that the elements of § 18-1.3-406 are satisfied. Colo. Rev. Stat. § 18-1.3-406(3)-(4).

Section 17-2-103 of the Colorado Revised Statutes (hereinafter, at times, the "Parole Revocation statute") outlines the circumstances in which a parolee may have his parole revoked and the maximum allowable revocation periods. If the Colorado Parole Board determines that the parolee has committed a "technical violation" of his parole, *i.e.* any violation other than the commission of a new crime, and "the parolee was not on parole for a crime of violence as defined in section 18-1.3-406(2)," his parole may be revoked for a period of no more than 180 days.[2] Colo. Rev. Stat. § 17-2-103(11)(b)(VI)(B)-(D).

---

[2] If a parolee is assessed as "below high risk" *and* he was not on parole for a crime of violence, his parole can only be revoked for a period not to exceed 90 days. Colo. Rev. Stat. § 17-2-103(11)(b)(IV)(A).

**B.     *Plaintiff's Conviction and Parole Revocation***

On September 28, 2005, Plaintiff pled guilty to second-degree kidnapping.  (Compl. ¶ 38.)  He was sentenced to six years imprisonment, less time served.  (*Id.*)  The mittimus filed in Plaintiff's criminal case shows that he was convicted pursuant to Subsection 1 of Colorado's second-degree kidnapping statute, Colo. Rev. Stat. § 18-3-302(1).  (*Id.*)  Unlike Subsection 4, discussed *supra,* Subsection 1 of § 18-3-302 is not defined as a *per se* crime of violence.  (*Id.* ¶ 39; c*ompare* § 18-3-302(1) *with* § 18-3-302(4).)  The District Attorney did not charge, and the sentencing court did not otherwise find, that that Plaintiff's crime satisfied the elements of Colo. Rev. Stat. § 18-1.3-406.  (*Id.* ¶ 41.)  Nevertheless, sometime after Plaintiff was incarcerated, Defendant John Doe, an unknown CDOC employee, completed a "Diagnostic Narrative Summary" on Plaintiff, with the notation: "Original Charge Violent: YES."  (*Id.* ¶ 43.)

On November 19, 2009, Plaintiff was released on parole.  (*Id.* ¶ 44.)  On March 4, 2011, Defendant Watt, a Parole Officer with the CDOC's Division of Adult Parole, took Plaintiff into custody and filed a complaint alleging that Plaintiff had committed several parole violations.  (*Id.* ¶ 45.)  Specifically, Defendant Watt alleged that Plaintiff changed his residence without consent, failed to submit to a urinalysis, and associated with two persons with criminal records—his daughter and his girlfriend.  (*Id.* ¶ 46.)  Plaintiff alleges that, because these violations were not new crimes and he was not charged or sentenced under the Violent Crimes statute, the maximum period for which his parole could be revoked under the Parole Revocation statute was 180 days.  (*See id.* ¶ 47.)

On March 9, 2011, Defendant Watt completed a Colorado Violation Decision Making Process (CVDMP) for Plaintiff.  (*Id.* ¶ 48.)  According to the CVDMP, Plaintiff's parole violations were "Type III," and pursuant to a 54-item Level of Service Inventory – Revised (LSI-R) assessment, Plaintiff's "Risk Level" was scored as "High."  (*Id.* ¶ 48.)  According to Plaintiff, under the CVDMP matrix, type III violators with a high-risk level should presumptively receive "medium" level responses, which might involve a verbal reprimand, increased frequency of drug testing, or increased contact with a parole officer.  (*Id.*)

Nevertheless, Defendant Watt did not follow these presumptive responses and instead sought revocation of Plaintiff's parole for the remainder of his sentence.  (*Id.*)  In reaching this decision, Defendant Watt apparently relied upon the Diagnostic Narrative Summary completed by Defendant Doe to conclude that Plaintiff had been convicted of a crime of violence.  (*Id.* ¶ 49.)  Defendant Cooper, Defendant Watt's supervisor, allegedly reviewed and approved of Defendant Watt's "override" of the presumptive responses to Plaintiff's parole violations and signed off on Defendant Watt's determination that Plaintiff had committed a crime of violence. (*Id.* ¶¶ 50-52.)

During Plaintiff's March 28, 2011 parole revocation hearing, Defendant Watt advised the Parole Board that Plaintiff was convicted of a crime of violence.  (*Id.* ¶ 51.)  As a result, the Parole Board revoked Plaintiff's parole for the remainder of his sentence, or 487 days.  (*Id.* ¶ 52.)

## C.       *Plaintiff's Complaints regarding his Parole Revocation*

Shortly after his parole was revoked, Plaintiff was placed at Cheyenne Mountain Reentry Center (CMRC), a private correctional facility operated by Defendant Community Education Centers, Inc. (CEC).  (*Id.* ¶ 53.)  Plaintiff began to complain almost immediately that his parole

revocation exceeded the 180-day maximum provided for by the Parole Revocation statute for offenders who did not commit a crime of violence.  (*Id.* ¶ 54.)  On May 11, 2011, Plaintiff submitted a Resident Request Slip to his case manager at CMRC, Defendant Markum, regarding his alleged misclassification.  (*Id.* ¶ 55.)  Plaintiff explained that his conviction was "not violent but DOC has [it] as being violent" and that his parole was "revoke[d for the remainder" of his sentence when he should have been "eligible for 180 day turnaround." (*Id.*)  Defendant Markum responded: "Your mittimus has you convicted of [second degree] kidnapping, seize/carry victim. CRS 18-3-302(1)" and "[a]ny DV is always violent."  (*Id.*  ¶ 56.)

According to a log entry dated May 16, 2011, Defendant Markum consulted Defendant Lalonde, a senior CMRC case manager, and Defendant Aragon, Supervisor of the CDOC Contract Monitoring Unit,[3] to further review the issue.  Together, Defendants Markum, Lalonde, and Aragon determined that, based on the allegations contained in the underlying police report, Mr. Williams had committed a statutory crime of violence.  (*Id.* ¶ 57.)  Defendant Markum sent Plaintiff another response on May 16, 2011 stating that "[u]pon review of our file, and after consulting with admin and PPMU [Private Prison Monitoring Unit], your crime is consider[ed] violent under DOC regulations.  See AR 550-04." (*Id.* ¶ 61.)  Plaintiff maintains that Defendant Markum's reference to CDOC Administrative Regulation (AR) 550-04 reflects another mistake, because, while AR 550-04's classification governs placement of inmates in prison, it does not control an inmate's sentence or the period for which parole may be revoked.  (*Id.* ¶ 62.)

---

[3] The Contract Monitoring Unit is responsible for overseeing private prisons contracting with the CDOC.  (Compl. ¶ 14.)

Plaintiff later filed a request with the sentencing court to clarify that his sentence was *not* for a crime of violence.  (*Id.* ¶ 63.)  On June 9, 2011, Judge Marilyn Antrim issued an Order stating that Plaintiff "was convicted under C.R.S. § 18-3-302(1) not (4).  Therefore, [he] was not subject to the crime of violence sentencing scheme pursuant to C.R.S. § 18-1.3-406."  (*Id.* ¶ 64.) The sentencing court also issued an amended mittimus making clear that "this was not a crime of violence pursuant to C.R.S. 18-1.3-406."  (*Id.*)

In a sworn affidavit, Defendant Carlson, the CDOC's Time/Release Operations Manager, confirms that the "amended mittimus for offender WILLIAMS was received by the DOC on June 9, 2011." (*Id.* ¶ 65.)  However, for almost nine months, Defendant Carlson allegedly took no action to further investigate Plaintiff's complaints of improper classification and wrongful incarceration.  (*Id.*)

A June 15, 2011 log entry by Defendant Markum confirms that the Order clarifying the nature of Plaintiff's sentence was received and filed by CMRC.  (*Id.* ¶ 66.)  Defendant Markum log entry further stated that "Mr. Williams has been arguing that his kidnapping crime should not be listed as violent by DOC.  I had previously brought the issue to CM3 Lalonde who reviewed William's [sic] file.  His decision at that time was that the DOC decision would stay.  I presented the new Motion to CM3 Lalonde and he said nothing would change. That DOC classified the crime as violent for their own purpose and there would be no changes."  (*Id.* ¶ 67.)  Defendant Markum also stated in his log that he told Plaintiff that the amended mittimus was shown to Defendant LaLonde, other CMRC administrators, and to the CDOC's Private Prison Monitoring Unit.  (*Id.* ¶ 68.)

Between June 21, 2011, and August 1, 2011, Plaintiff continued to complain about his misclassification to Defendant Markum and others, to no avail.  (*Id.* ¶¶ 68-76.)  On August 25, 2011, Plaintiff, with help from another inmate, filed a Rule 106 complaint in Arapahoe District Court against the CDOC and the Colorado Attorney General regarding his allegedly erroneous classification and over-detention.  (*Id.* ¶ 77.)  On August 31, 2011, the 180-day maximum revocation period for technical parole violations where the underlying offense is not a crime of violence expired.  (*Id.* ¶ 78.)  Plaintiff was not released.  (*See id.*)

On October 21, 2011, Plaintiff attempted to run a Classification Appeal up the administrative chain through Defendant Markum.  (*Id.* ¶ 79.)  The Appeal was sent back and forth among various supervisors.  (*Id.*)  After finding the form back on his own desk, Defendant Markum concluded that the Appeal "appears to be a lost child and I do not know what to do with it."  (*Id.*)  As such, he "put it in the file until some other route develops."  (*Id.*)

Plaintiff met with Defendant Markum again on February 14, 2012.  (*Id.* ¶ 80.)  The meeting ended when, according to Defendant Markum's log entry, Defendant Markum told Plaintiff that he "was tired of listening to [Plaintiff] and that he could get the 'fuck' out of the office.  [Defendant Markum] also told [Plaintiff] that [he] was tired of his f . . . . sh . . . ."  (*Id.*)

Meanwhile, in Plaintiff's Rule 106 action, the defendants filed two motions for extension of time to respond, the latter of which admitted that the Parole Board was reviewing Plaintiff's parole statute and was "likely to order changes to Plaintiff's parole status in the imminent future that will most likely render this case moot."  (*Id.* ¶¶ 82-83.)  The court granted both extensions.  (*Id.*)

8

On March 15, 2012, Defendant Carlson contacted Dr. Anthony Young, Chairman of the Parole Board, regarding Plaintiff's issue and case. (*Id.* ¶ 84.)  Plaintiff alleges that Defendant Carlson informed Dr. Young that Plaintiff's crime had likely been misclassified as a statutory crime of violence and that his parole had been improperly revoked in excess of 180 days. (*Id.*)

On March 15, 2012, Defendant Carlson sent an email to Larry Turner with the CDOC's Classification Unit stating:

> Williams was revoked for the remainder of his parole term when he 'should' have only been revoked for 180 days. This whole thing started because he filed a motion for habeas corpus, and the AG's opinion is that we are currently holding him illegally. He should have been out last September at the latest.

(*Id.* ¶ 85.)

The next day, Plaintiff was paroled, 198 days after the 180-day maximum for technical parole violations where the underlying offense was not a crime of violence. (*Id.* ¶ 86.)  On April 4, 2012, Plaintiffs' Rule 106 action was dismissed as moot. (*Id.* ¶ 87.)

Plaintiff asserts that he is not the only inmate who was misclassified under similar circumstances. (*Id.* ¶¶ 88, 99-102.)  Plaintiff alleges that the CDOC has several *de facto,* if not official, policies and practices that have caused prisoners' crime to be misclassified as crimes of violence. (*Id.* ¶ 88.) Those policies include (1) referring statutory questions of parole eligibility to case managers, including case managers at private prisons (*id.* ¶¶ 89-94); (2) relying on AR 550-04, rather than the governing statutes, to make determinations as to parole eligibility (*id.* ¶ 95); and (3) relying on law enforcement investigative reports, rather than findings made at inmates' criminal trials and sentencing hearings, to determine whether the underlying offense was a crime of violence (*id.* ¶¶ 96-97).

9

## PROCEDURAL HISTORY

Plaintiff's Complaint asserts three claims for relief.  The first two claims are asserted against all of the defendants, pursuant to 42 U.S.C. § 1983, for violations of Plaintiff's Eighth and Fourteenth Amendment rights.  Plaintiff's third claim is a state-law claim for negligence against Defendants Markum, Lalonde, and CEC.

The CDOC Defendants' and CMRC Defendants' Motions to Dismiss were both filed on November 22, 2013.  Plaintiff filed a single response opposing both Motions to Dismiss on December 23, 2013.  (Doc. No. 33 [Resp.].)  The CMRC Defendants filed their Reply on January 6, 2014 (Doc. No. 40 [CMRC Defs.' Reply]) and the CDOC Defendants filed their Reply on January 21, 2014 (Doc. No. 44 [CDOC Defs.' Reply]).  Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARD[4]

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

---

[4] Although the CDOC Defendants' Motion to Dismiss is entitled "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (*see* CDOC Defs.' Mot. Dismiss at 1, emphasis added), the body of their Motion to Dismiss does not reference Rule 12(b)(1), much less make any arguments that the court lacks subject-matter jurisdiction over this action.

10

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted). "Where a

11

complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*,129 S. Ct. at 1949 (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."); *Kennedy v. Peele*, 552 F. App'x 787, Case No. 11-cv-00967-REB-KMT, 2014 WL 92251, *4 (10th Cir. January 10, 2014).  "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## ANALYSIS

### A.   § 1983 Claims

#### 1.   Statute of Limitations

The CDOC and CMRC Defendants both argue that Plaintiff's § 1983 claims are barred by the statute of limitations.[5]  The court disagrees.

---

[5] Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

"State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Therefore, Plaintiff's § 1983 claims are subject to a two-year statute of limitations. *Hunt v. Bennett,* 17 F.3d 1263, 1265 (10th Cir. 1994); Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "regardless of the theory upon which the suit is brought . . . shall be commenced within two years."). However, federal law governs when a cause of action accrues. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969. "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotation marks and citation omitted); *see also Johnson v. Johnson Cnty. Com'n Bd.,* 925 F.2d 1299, 1301 (10th Cir. 1991) (§ 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action.").

Defendants argue that Plaintiff's claims accrued on March 28, 2011, when the Parole Board revoked his parole for the remainder of his sentence rather than for only 180 days, or, at the latest, in May 2011, when Defendant Markum twice informed Plaintiff that his parole was properly revoked because his crime was "violent." (CDOC Defs.' Mot. Dismiss at 7; CMRC Defs.' Mot. Dismiss at 14-15.) However, while the Parole Board's revocation of Plaintiff's parole for the duration of his sentence and Defendant Markum's "confirmation" of the Parole Board's decision may be necessary support for Plaintiff's § 1983 claims, they are not sufficient

13

to establish a cause of action under § 1983.  Instead, because both of Plaintiff's § 1983 claims relate to his *wrongful* incarceration in excess of the 180 day maximum provided for by the Parole Revocation statute (s*ee* Compl. at 23-35), that injury (wrongful incarceration) must have occurred before Plaintiff could know of all the facts underlying his § 1983 claims.  Because Plaintiff does not contest that his parole was properly revoked for 180 days under the Parole Revocation statute, *see* Colo. Rev. Stat. § 17-2-103(11)(b)(VI)(B)-(D), Plaintiff was not *wrongfully* incarcerated until August 31, 2011.  Thus, even though Plaintiff complained about the Parole Board's decision shortly after his arrival at CMRC up through August 31, 2011, he was merely complaining of an *impending* constitutional injury at that time.

The primary case relied on by Defendants, *Romero v. Lander,* 461 F. App'x 661 (10th Cir. 2012), is distinguishable.  In *Romero,* the plaintiff claimed the defendants had violated his constitutional rights by misclassifying him as a sex offender.  *Id.* at 665.  The Tenth Circuit panel rejected the plaintiff's contention that his claims did not accrue until he learned the "future impact of his classification"—namely, that it would "forever follow[] him should he ever again return to prison." *Id.*  Instead, because all of the plaintiff's constitutional claims related to two injuries—his classification as a sex offender and the concomitant requirement that he admit to being a sex offender—his claims arose at the time he was misclassified.  *Id.* at 667.

Here, as discussed, Plaintiff did not know of the factual basis of his § 1983 claims *until* he allegedly began to be wrongfully incarcerated.  Indeed, if Defendants had reversed course prior to August 31, 2011, the decision to revoke Plaintiff's parole for the duration of his sentence would not have caused Plaintiff any cognizable harm.  In other words, had Defendants concluded that Plaintiff's parole could only be revoked for a maximum of 180 days on or before August 31,

2011, Plaintiff would not have any viable § 1983 claims.

Therefore, the court finds that Plaintiff's § 1983 claims accrued on August 31, 2011. Although Plaintiff's Complaint was not filed until September 3, 2013, Federal Rule of Civil Procedure 6(a) provides that if the last day of the limitations period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).  Because August 31 and September 1, 2013 fell on a Saturday and Sunday, respectively, and September 2, 2013 was a legal holiday (Labor Day), Plaintiff's Complaint was timely filed on September 3, 2013.  Therefore, the court rejects Defendants' argument that Plaintiff's § 1983 claims are barred by the applicable statute of limitations.

### 2.    *Failure to State a Claim for Relief*

Defendants argue that Plaintiff's § 1983 claims fail because Plaintiff's allegations do not plausibly establish that they violated Plaintiff's Eighth and Fourteen Amendment rights.  The court agrees.

In the Tenth Circuit, imprisonment beyond one's term can constitute cruel and usual punishment for purposes of the Eighth Amendment.  *Mitchell v. N.M. Dep't of Corrs.,* 996 F.2d 311, 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (unpublished table opinion) (citing *Sample v. Dierks,* 885 F.2d 1099, 1108-10 (3d Cir. 1989)).  To make out such a claim under the Eighth Amendment, a plaintiff must allege that the defendants acted with deliberate indifference to whether the plaintiff suffered an unjustified deprivation of his liberty.  *Sample,* 885 F.2d at 1110; *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

To state a claim for violations of procedural due process under the Fourteenth

Amendment, a plaintiff must allege that (1) he was deprived of an interest in "life, liberty, or property," and (2) the government deprived the plaintiff of that interest without adequate due process. *Elliot v. Martinez,* 675 F.3d 1241, 1245 (10th Cir. 2012). If state law provides that an inmate is entitled to be released from prison, then the interest in being released is a protected liberty interest and the inmate is entitled to adequate procedures before the government can hold him any longer. *Id.* "To establish a violation of due process, plaintiff must show that defendants were guilty of more than mere negligence." *Sloan v. Pugh,* No. Civ.A05CV00527REBCBS, 2005 WL 2464678, at *1 (D. Colo. Oct. 4, 2005) (citing *Daniels v. Williams,* 474 U.S. 327, 334 (1986)).

The crux issue underlying Plaintiff's § 1983 claims is whether the Parole Board was authorized by state law to determine that Plaintiff's underlying offense was a crime of violence, even though Plaintiff was not charged under the Violent Crimes statute and the sentencing court did not make explicit findings that Plaintiff's offense was a crime of violence. More specifically, if the Parole Board was required to accede to the absence of any crime of violence findings by the sentencing court, then the Parole Board was permitted to revoke Plaintiff parole only for a maximum of 180 days. *See* Colo. Rev. Stat. 17-2-103(11)(a)(VI)(A)-(D). However, if the Parole Board was permitted to conclude that Plaintiff committed a crime of violence, even though he was not charged or sentenced under the Violent Crimes statute, then Plaintiff appears to concede that his parole was properly revoked for the duration of his sentence.

Based primarily on *McKinney v. Kautzky,* 801 P.2d 508 (Colo. 1990), the court finds that the Parole Board was authorized to independently determine that Plaintiff's underlying offense was a crime of violence. In *McKinney,* the Colorado Supreme Court considered whether the

16

CDOC was permitted to delay an inmate's placement in community corrections where, even though he was not sentenced under a prior version of the Violent Crimes statute, Colo. Rev. Stat. § 16-11-309,[6] he was convicted of crime "enumerated" under that statute. *Id.* at 509.

At that time,[7] Section 17-27-106(4)(a) of the Colorado Revised Statutes provided that:

(I) the executive director [of the CDOC] shall refer an offender to such community correctional facility or program as provided in subparagraph (II) of this paragraph. . . .

(II)(A) An offender who has not been convicted of an offense enumerated in section 16–11–309(2), C.R.S., and who has displayed acceptable institutional behavior shall be referred to a community correctional facility or program for placement up to sixteen months immediately prior to such offender's parole eligibility date.

(B) Any other offender shall be referred to a community correctional facility or program for a placement of up to one hundred eighty days immediately prior to such offender's parole eligibility date.

*Id.*

Relying on the plain meaning of former Section 17-27-706, the *McKinney* court found "nothing in section 17-27-106 to indicate that sentencing under section 16-11-309(2) is a prerequisite to a finding that the offender falls under part (B) of [section 17-27-206]." *Id.* Instead, "[s]ection 17-27-106(4)(a)(II)(A) refers to an offender that has not been convicted of an offense '*enumerated*' under in section 16-11-309(2)." *Id.* (emphasis in original). In turn, section 16-11-309(2) defined a 'crime of violence' as:

a crime in which the defendant used, or possessed and threatened the use of, a

---

[6] The Violent Crimes statute was amended and relocated at Colo. Rev. Stat. 18-1.3-406 in 2002. 2002 Colo. Sess. Laws Ch. 318, § 3.
[7] It appears that Section 17-27-106 has been repealed. However, *McKinney's* holding is still good law and therefore *McKinney* provides persuasive authority as to appropriate construction of the statutes at issue in this case.

> deadly weapon during the commission or attempted commission of any crime committed against an elderly or handicapped person or a crime of murder, first or second degree assault, robbery, first degree arson, first or second degree burglary, escape, or criminal extortion, or during the immediate flight therefrom, or the defendant caused serious bodily injury or death to any person, . . . during the commission or attempted commission of any such felony or during the immediate flight therefrom.[8]

*Id.* (footnote in original and emphasis on "robbery" removed).  Because "the plain and ordinary meaning of 'enumerated' . . . [was] *definitional*[,]" the *McKinney* concluded that the only requirement for determining eligibility for referral to community corrections was that "the crime for which the inmate was convicted be among those listed in section 16-11-309(2)." *Id.* at 510 (emphasis added).  Thus, the inmate did not need to be sentenced under section 16-11-309(2) for the CDOC to delay his referral to community corrections.  *See id.*

Although the Parole Revocation statute and former section 17-27-206 employ slightly different language—namely, "defined in" versus "enumerated in"—this does not render *McKinney* distinguishable.  Indeed, because the *McKinney* court concluded that "enumerated" was "definitional," the court finds that *McKinney's* statutory construction equally applicable to the term "defined in."  *Id.* at 510.

To be sure, *McKinney* did not involve a decision from the Parole Board.  Nevertheless, at least one case has relied on *McKinney* to conclude that sentencing under the Violent Crimes statute is not required for the Parole Board to conclude that a parolee committed a crime of violence.  *Martinez v. Colo. State Bd. of Parole,* 989 P.2d 256 (Colo. App. 1999).  More specifically, in *Martinez,* the Colorado Court of Appeals relied on *McKinney* to conclude that the

---

[8] Although Section 16-11-309(2) did not include kidnapping as a crime of violence, kidnapping is included in the current version of the Violent Crimes statute.  Colo. Rev. Stat. § 18-1.3-406(2)(a)(II)(D).

Parole Board was only required to reconsider an inmate's request for parole every three years where, even though the inmate had not been sentenced under the Violent Crimes statute, he had been convicted of an enumerated crime of violence. *See* 989 P.2d at 257-258. Similarly, in *Busch v. Gunter,* 870 P.2d 586, 587-88 (Colo. App. 1993)*,* the Colorado Court of Appeals found that parole eligibility was correctly delayed for an inmate who had been convicted in Wisconsin of a crime enumerated in the Violent Crimes statute, even though that inmate had not been convicted of a separate count of a crime of violence. *See also Outler v. Norton,* 934 P.2d 922, 926 (Colo. App. 1997) *overruled on other grounds by Meredith v. Zavaras,* 954 P.2d 597, 603 (Colo. 1998) (holding that an inmate was not eligible for parole until completing 75 percent of his sentence because he was previously convicted of a crime of violence, even though he was not charged and sentenced for that crime under Section 16-11-309).

Based on *McKinney,* as well as *Martinez* and *Busch,* the court finds that the fact that Plaintiff was not sentenced under the Violent Crimes statute did not foreclose the Parole Board from finding that Plaintiff's underlying offense was a crime of violence. Instead, the Parole Board was only required to find that Plaintiff was convicted of a crime of violence as defined in the Violent Crimes statute. *See McKinney,* 801 P.2d at 510. As such, the Parole Revocation statute did not limit Plaintiff's parole revocation to a maximum of 180 days.

Plaintiff argues that allowing the Parole Board to independently determine whether a parolee committed a crime of violence would render the subsections (3) and (4) of the Violent Crimes statute meaningless. (Resp. at 8-9.) However, those provisions relate only to *sentencing* for a crime of violence*. See* Colo. Rev. Stat. 18-1.3-406(3)-(4)*; People v. Hoang,* 13 P.3d 819, 821 (Colo. App. 2000) ("a prosecutor is required to plead and prove a violent crime count against

a defendant before such *sentence* may be imposed") (emphasis added, citation omitted); *People v. Thrower,* 670 P.2d 1251, 1253-54 (Colo. App. 1983) ("enhancement of [a] *sentence* for having committed a crime of violence would be plain error" where "the jury was not instructed on the elements of crime of violence nor given a separate verdict form or interrogatory") (emphasis added).  In light of *McKinney* and the related cases discussed above, subsections (3) and (4) are not pertinent to *parole*-related determinations.

The court acknowledges that its discussion hereto has been limited to the Parole Board, which is not a named defendant.  The court now turns to Plaintiff's allegations against the named defendants.

The court first finds that, even assuming the truth of Plaintiff's allegations, his § 1983 claims against Defendants Doe, Watt, and Cooper fail to state a plausible claim for relief.

Plaintiff alleges Defendants Doe, Watt, and Cooper all concluded that Plaintiff was convicted of a crime of violence, with knowledge of, or indifference to, the fact that Plaintiff was not charged or sentenced under the Violent Crimes statute.  First, Plaintiff alleges that Defendant Doe concluded that Plaintiff's original charges were "violent" in the Diagnostic Narrative Summary.  (Compl. ¶ 43.)  Second, Plaintiff alleges that Defendant Watt relied on the Diagnostic Narrative Summary in seeking to revoke Plaintiff's parole for the duration of his sentence and in representing to the Parole Board that Plaintiff was convicted of a crime of violence.[9]  (*Id.* ¶ 49,

---

[9] It is unclear whether Defendant Watt's alleged decision to override the presumptive responses to a type III violator with a high-risk level is a separate basis for Plaintiff's § 1983 claims.  (*See* Compl. ¶ 48.)  However, to the extent it is, Plaintiff nevertheless fails to state a plausible claim for relief.  More specifically, there is no discussion of what circumstances are sufficient to override these responses.  As such, the court cannot conclude that Plaintiff's crime of violence conviction was not sufficient to override these presumptive responses.

51.)  Third, Defendant Cooper allegedly approved and signed off on Defendant Watt's determination that that Plaintiff had committed a crime of violence.  (*Id.* ¶¶ 50, 52.)

However, outside of his now-debunked position that a charge and sentence under the Violent Crimes statute were necessary prerequisites to revoking his parole for more than 180 days, Plaintiff does not allege any facts raising a plausible inference that Defendant Doe, Watt, and Cooper's conclusions that he committed a crime of violence were incorrect.  Indeed, to the contrary, Plaintiff was convicted of kidnapping, which is an enumerated crime under the Violent Crimes statute, Colo. Rev. Stat. § 18-1.3-406(2)(a)(II)(D), and the investigative report that precipitated the kidnapping charges establish that Plaintiff pointed a knife at his victim and threatened to kill her.  (Mot. Dismiss, Ex A-1.)[10]  *See also Busch,* 870 P.2d at 588 (considering the underlying police report to determine that the plaintiff's foreign conviction was a crime of violence).  Therefore, the court finds that Plaintiff has not plausibly alleged that he was wrongfully incarcerated in excess of his term, in violation of the Eighth Amendment, or that he had a liberty interest in being release on parole after 180 days under the Fourteenth Amendment.

Turning to Defendants Aragon, Carlson, Markum, and LaLonde, Plaintiff effectively alleges that each of these defendants failed to take corrective action to rectify the purportedly excessive revocation of his parole.  More specifically, in reviewing Plaintiff's complaints—including those raised after the sentencing court issued an amended mittimus—Defendant Aragon, Markum, and LaLonde allegedly determined that the duration of Plaintiff's parole revocation was not improper because he had committed a crime of violence. (Compl. ¶¶ 55-57,

---

[10] The court may consider the investigative report underlying Plaintiff's conviction as it is referenced in the Complaint and the parties do not dispute its authenticity.  *Hogan v. Winder,* --- F.3d ----, 2014 WL 3827603, at *13 n.9 (10th Cir. Aug. 5, 2014).

61, 67-76, 79-80.)  Defendant Markum also allegedly reaffirmed this decision to Plaintiff several times.  (*See id.*)  Defendant Carlson, in turn, allegedly received the amended mittimus issued by the sentencing court, but took no action to investigate Plaintiff's complaints of improper classification and wrongful incarceration.  (*Id.* ¶ 65.)

A prison official may violate the Eighth Amendment by failing to adequately investigate an inmate's complaint regarding a sentence calculation problem that ultimately results in the inmate being held beyond his term.  *See Sample,* 885 F.2d 1099 at 1110.  However, to state a claim for relief, the plaintiff must allege facts establishing that the official acted with deliberate indifference.  *Id.*  A prison official acts with deliberate indifference when he or she "knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others."  *Id.*

As discussed, even assuming the truth of the facts alleged, Plaintiff has failed to establish that the Parole Board decision to revoke his parole for the duration of his sentence was improper. Thus, Defendant Markum, LaLonde,[11] Aragon, and Carlson did not deliberately disregard a sentence calculation problem that resulted in Plaintiff being held beyond his term.  *Sample,* 885 F.3d at 1110.  Stated differently, Defendants Markum, LaLonde, Aragon, and Carlson did not cause or contribute to any violation of Plaintiff's constitutional rights.  *Lippoldt v. Cole,* 468 F.3d 1204, 1219 (10th Cir. 2006) (causation is an essential element of a § 1983 claim)

---

[11] Defendants Markum and LaLonde lodge a colorable argument that they were not state actors for purposes of Plaintiff's § 1983 claims.  (CMRC Defs.' Mot. Dismiss at 8 (citing *Beil v. Lake Erie Corrs. Records Dep't,* 282 F. App'x 363 (6th Cir. 2008)).  However, because the court ultimately determines that Plaintiff fails to state a § 1983 claim against them even if they could be considered state actors, the court does not address this argument.

Finally, Plaintiff alleges that Defendants Carlson, Hager, Hollenbeck, and Archuleta promulgated, implemented, or possessed responsibility for policies and procedures that caused or contributed to a violation of his constitutional rights.  (*See* Compl. ¶¶ 88-102.)  However, for a supervisor to be held liable under § 1983, there must be an underlying constitutional violation. *See Dodds v. Richardson,* 614 F.3d 1185, 1199 n.8, 1204-05 (10th Cir. 2010).  As already established, the revocation of Plaintiff's parole for the duration of his sentence did not violate his constitutional rights.

Accordingly, for the reasons discussed above, the court finds that Plaintiff's allegations fail to state a violation of his Eighth and Fourteenth Amendment rights.  As such, the CDOC Defendants' and CMRC Defendants' Motions to Dismiss are properly granted with respect to Plaintiff's first and second claims for relief.

### 3.    *Qualified Immunity*

The CDOC Defendants also argue they are entitled to qualified immunity in their individual capacities. (CDOC Defs.' Motion Dismiss at 11.) Whether the CDOC Defendants are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir.2007).  Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss.  *Pueblo Neighborhood Health Ctr., Inc. v. Losavio,* 847 F.2d 642, 645-46 (10th Cir. 1988).  *See also Workman v. Jordan,* 958 F.2d 332, 334 n.2 (10th Cir. 1992) (court's review of an assertion of qualified immunity on a Rule 12(b)(6) motion is limited to the pleadings).

Resolution of a dispositive motion based on qualified immunity involves a

23

> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* Having concluded that Plaintiff has failed to state a claim for violations of his Eighth and Fourteenth Amendment rights, the court finds that the CDOC Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims.

**B.      *Negligence Claim***

The court finds that Plaintiff's negligence claim against the CMRC Defendants is properly dismissed. To state a negligence claim under Colorado law, Plaintiff must establish the following four elements: (1) the existence of a legal duty owed by the defendant; (2) a breach of that duty; (3) causation; and (4) damages. *Observatory Corp. v. Daly,* 780 P.2d 462, 465 (Colo. 1989).

Plaintiff's negligence claim alleges that Defendants Markum and LaLonde owed and breached their duty to properly investigate Plaintiff's grievances and that this breach caused Plaintiff's over-detention for 198 days. (Compl. ¶ 136-39, 141.) Further, Plaintiff alleges that CMRC itself is liable under the doctrine of *respondent superior* and for negligently training and supervising Defendants Markum and LaLonde. (*Id.* ¶¶ 140-141.) However, as discussed above,

24

Plaintiff's allegations fail to establish that the revocation of his parole for the duration of his sentence was improper.  As such, even assuming the truth of Plaintiff's allegations, Plaintiff has failed to establish that he suffered any damages as a result of Defendant Markum and LaLonde's alleged failure to investigate or CMRC's failure to train and supervise.  Therefore, the court finds that Plaintiff fails to state a negligence claim against the CMRC Defendants.  Accordingly, the court finds that the CMRC Defendants' Motion to Dismiss is properly granted with respect to Plaintiff's negligence claim.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that the "CMRC Defendants' Motion to Dismiss" (Doc. No. 26) and the CDOC Defendants' "Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and (6)" (Doc. No. 28) be GRANTED and that Plaintiff's Complaint (Doc. No. 1) be dismissed.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 18th day of August, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

26